UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GERALD W. YARINGTON, JR.,

                Plaintiff,

v.

**DECISION AND ORDER**
13-CV-016S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.

     1.     Gerald Yarington Jr. challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act").

     2.     Following a traumatic accident in 1989, the Social Security Administration (SSA) found Yarington to be disabled. He accordingly received benefits until 1996, when SSA cancelled his benefits.[2] After his benefits ceased, Yarington worked odd jobs on a part-time basis as a handy man or in car repair. And he worked full-time at Home Depot from 2007 through April 30, 2008.

On January 19, 2010, he applied for benefits again, alleging an onset date of April 30, 2008. SSA denied that application, and as result, he requested an administrative hearing. Yarington received that hearing via videoconference before ALJ Roxanne Fuller on August 16, 2011. The ALJ considered the case *de novo*, and on August 30, 2011

---

[1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, under Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is substituted for former Commissioner, Michael J. Astrue, as the defendant in this suit.

[2]Yarington testified that he ignored a letter from SSA notifying him that it intended to review his case and initiate a hearing. Apparently, his benefits expired soon thereafter.

issued a decision denying Yarington's application. Yarington's request for review with the Appeals Council was denied, prompting him to file the current civil action on January 7, 2013, challenging Defendant's final decision.[3]

3.     On September 26, 2013, the Commissioner and Yarington both filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the Commissioner's motion is granted and Yarington's is denied.

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's

---

[3]The ALJ's decision became the Commissioner of Social Security's final decision when the Appeals Council denied Plaintiff's request for review.

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). This Court must, however, "independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled." Valder v. Barnhart, 410 F. Supp. 2d 134, 138 (W.D.N.Y. 2006). "Failure to apply the correct legal standards is grounds for reversal." Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.  This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.  The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

        8.       In this case, the ALJ made the following findings:

(1) Yarington has not engaged in substantial gainful activity since his alleged onset date. (R. 51-53.)[4]

(2) Yarington's vision loss, migraines, anxiety, and pain disorder constitute severe impairments. (Id.)

(3) He does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations. (Id.)

(4) He cannot perform any of his past relevant work, (R. 57) but he retains the residual functional capacity (RFC) to perform light work, except he must avoid all use of machinery and exposure to unprotected heights and concentrated exposure to chemicals; he is limited to occupations requiring "only occasional far acuity, peripheral acuity, depth perception, and nighttime vision"; and he is able to carry out one- to two-step instructions while performing simple, routine, repetitive tasks with only occasional

---

[4]Citations to the underlying administrative record are designated "R."

4

interaction with co-workers and the public. (R. 53-54).

        (5) Last, relying on the testimony of a vocational expert, the ALJ found that Yarington could perform work that exists in significant numbers in the national economy. (R. 57-58.)

    9.    Yarington argues that remand or reversal is required because the ALJ (1) failed to classify some impairments as severe, (2) did not develop the record, (3) relied on improper testimony from the vocational expert, and (4) failed to properly weigh medical source opinions.

    10.    Regarding the first objection, Yarington argues that impairments in his "left upper extremity," as well as his panic attacks and insomnia should have been considered "severe" under the Social Security regulations.

    A severe impairment is one that "significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3P. Yarington first argues that impairments related his accident in 1989, including limitations with respect to his left arm, hand, and wrist are properly classified as "severe."  But the objective medical evidence on which Yarington relies to support this contention simply does not compel that result. He points to the findings of Dr. Samuel Balderman, who found that Yarington has "15 degrees of dorsal and palmar flexion in his left wrist;" he also points to an X-ray showing that there is a plate and screws in his forearm. But Dr. Balderman did not find that these issues limited Yarington at all; in fact, he found that Yarington had "5/5 grip strength" and that his dexterity was "intact." (R. 445.) These are substantially similar to the findings of Dr. Joseph C. DiPirro (R. 400, 552.) Instead, Dr. Balderman concluded that "the claimant's limitations are related to his poor vision." (Id.) Accordingly, despite the one limitation regarding palmar

and dorsal flexion, substantial evidence supports the ALJ's conclusion that these impairments do not have more than a minimal impact on Yarington's ability to perform basic work activities. What is more, any limitation in this regard was adequately accounted for in the ALJ's RFC determination, as she concluded Yarington could perform only light work, which is limited to lifting no more than 20 pounds. The ALJ herself noted that her RFC restricting him to light work "accomodate[s]" these limitations. (R. 52.)

11.  Yarington also contends that the ALJ should have found his panic attacks to be a severe impairment. But the ALJ considered Yarington's anxiety generally to be a severe impairment; this clearly accounts for any panic attacks that Yarington suffered from. See, e.g., Walterich v. Astrue, 578 F. Supp. 2d 482, 505 (W.D.N.Y. 2008) (considering generalized anxiety and recurrent panic attacks together under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06, entitled "Anxiety Related Disorders").

12.  Last, Yarington contends that his insomnia should have been considered severe. But aside from the fact that he was diagnosed with this impairment, Yarington points to no functional limitations brought about because of it. This Court is willing to presume, as Yarington urges it to do, that a lack a sleep may well generally affect one's ability to perform work. But this Court will not presume, without substantial evidence, that the ALJ erred in concluding that this impairment does not "*significantly* limit[]" *Yarington's* "physical or mental abilities to do basic work activities." See SSR 96-3P (emphasis added). At this stage of the sequential analysis, it is the plaintiff's burden to demonstrate that such a significant limitation exists, but Yarington can only say that "a worker who comes to work tired and exhausted" would have sufficient limitations. That speculative, generic assertion is insufficient to warrant reversal of the ALJ's determination.

13.  Yarington next maintains that the ALJ erred by failing to develop the record.

6

Specifically, Yarington contends that the ALJ should have attempted to retrieve documentation from his first disability application, submitted after the 1989 accident. He argues that this duty was triggered because he suffers from ongoing limitations related to that accident.

The regulations provide that "[b]efore [SSA] make[s] a determination that you are not disabled, [SSA] will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 404.1512(d). "An ALJ is required to obtain additional evidence only if [he] cannot decide whether a claimant is disabled based on the existing evidence." Gray v. Astrue, No. 09-CV-00584, 2011 WL 2516496, at *6 (W.D.N.Y. June 23, 2011) (emphasis added).

As the regulation provides, the SSA is required to develop the record for at least 12 months preceding the date of Yarginton's application; it is not required to develop the record beyond that date unless it determines it to be necessary. This Court finds no reversible error in the ALJ's determination that further development was unnecessary. The ALJ had before her relevant, and *recent* medical evidence. This included records from, among others, Dr. Joseph DiPirro, the WNY Center for the Visually Impaired, Dr. J. Maurice Hourihane, and consultive examiners Dr. Renee Baskin, Samuel Balderman, and T. Andrews. Although there is no dispute that the 1989 accident left him impaired, Yarington has not demonstrated that the status of his medical condition in 1989 – roughly 20 years before his alleged onset date – was necessary for the ALJ to make a determination in 2011. This objection is therefore rejected.

14.    Yarington next contends that the ALJ's reliance on the vocational expert violated SSR 00-4P. That ruling provides that "SSA adjudicators may not rely on evidence

7

provided by a [vocational expert], [vocational specialist], or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions." Yarington appears to contend that the vocational expert's testimony was invalid because the hypothetical posed to him limited Yarington to "occasional interaction" with co-workers. Pointing to SSR 85-15, Yarington notes that unskilled work is defined as

> the abilit[y] (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

SSR 85-15 goes on to provide that "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Seizing on the language "sustained basis," and contrasting it with the ALJ's limitation to "occasional interaction," Yarington contends that "the [vocational expert] testified in contradiction of this SSA regulatory definition." (Pl. Br. at 17.)

This argument is unavailing.

First, SSR 85-15 does not even apply to a case like this, where the claimant suffers from a *combination* of exertional and non-exertional limitations. Nosbisch v. Astrue, No. 10-CV-285S, 2012 WL 1029476, at *5 (W.D.N.Y. Mar. 26, 2012) (SSR 85-15 addresses the medical-vocational rules for evaluating *solely* non-exertional impairments); Solsbee v. Astrue, 737 F. Supp. 2d 102, 115 (W.D.N.Y. 2010) (citing Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir.1995)) (same); Roma v. Astrue, 468 F. App'x 16, 20 (2d Cir. 2012) (summary order) ("SSR 85–15 . . . does not apply to a case, such as this one, in which the claimant suffers from a combination of exertional and non-exertional impairments.").

Second, even if SSR 85-15 did apply, and if Yarington were correct – *i.e.*, the

vocational expert testified in contravention of SSR 85-15 – it would be the ALJ who erred by calling a vocational expert in the first place and posing any hypothetical when SSR 85-15 called for a finding of disabled. But SSR 85-15 does not direct the ALJ to find the claimant disabled. See, e.g., Deboer v. Astrue, No. 5:11-CV-1359 GLS, 2012 WL 6044847, at *5 (N.D.N.Y. Dec. 5, 2012). Rather, the ALJ's duty in such a case – where a claimant's non-exertional limitations erode the occupational base – is simply to obtain the testimony of a vocational expert. As the Second Circuit has found, "If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir.1986)); see also Ketch v. Colvin, 12-CV-1104S, 2014 WL 411875, at *3 (W.D.N.Y. Feb. 3, 2014) (occupational base is limited when claimant can interact "occasionally" with co-workers, but ALJ simply required to consult a vocational expert in such a case).  Of course, the ALJ did precisely that in this case.

Finally, even if SSR 85-15 did apply, and even if it did direct a finding of disabled, the ALJ's determination that Yarington would be limited to "occasional" interaction with the public and co-workers does not necessarily equate to a finding, as Yarington apparently urges, that he has a "substantial loss of ability" to "respond appropriately to supervision [and] co-workers." See Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 399 (D. Conn. 2012) (ALJ did not find that claimant had a "severe" mental impairment; therefore, resort to SSR 85-15 was not necessary). The ALJ did not find such a "substantial loss" in an "ability to respond" and the hypothetical posed to the vocational expert was not in error. In turn, the ALJ properly relied on the expert's testimony. See, e.g., Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). This objection is therefore also rejected.

15.     Yarington's final argument does not save his claim. This Court finds no reversible error in the ALJ's application of weight to the various physicians' opinions. Yarington faults the ALJ for failing to use the "statutory 6 factors in evaluating the opinion evidence." (Pl.'s Br. at 18.) But Yarington himself fails to identify other opinions on which the ALJ should have placed more weight and which might have altered the ALJ's conclusion. In his reply brief Yarington finally argues that the ALJ "rejected" the opinions of Drs. DeGaeteno and Murray, who found Yarington's panic attacks to be severe. But, as noted above, the ALJ considered Yarington's anxiety in general to be a severe impairment, and this Court finds no error in that determination.

16.     In sum, after undertaking a full review of the record, it becomes clear that the ALJ's findings must be sustained. The evidence does not compel a finding that Yarington is disabled and cannot perform the circumscribed work (which exists in significant numbers in the national economy) identified by the ALJ.  This Court will therefore grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's motion for the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.11) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated:  March 23, 2014
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court